Coös, }
June, 1895. }

LETOURNEAU *v.* BERLIN BUILDING AND LOAN ASSOCIATION *& a.*

Shares of a building and loan association retired by vote of the directors are entitled to participate in loan premiums actually paid at the date of withdrawal.

BILL IN EQUITY, for an injunction, and to determine the withdrawal value of shares of a building and loan association. Facts found by a referee.

The defendants were organized as a building and loan association in September, 1890, under P. S., *c.* 166. All members are shareholders, and pay one dollar per month on each share until the shares mature, or are worth $200 each. The shares are divided into series, and all shares in the same series begin at the same time and have the same value. The money paid on shares and as interest on loans, also paid monthly, is loaned to the member who will pay the highest premium therefor at auction. The premium is deducted from the loan when made, but a note is given for the full amount. Each loan is secured by shares of an ultimate value equal to the loan, and by a first mortgage of real estate. The notes given to the association are substantially all the assets; and each note is a promise to pay the amount

---

\* See foot-note on page 22.

loaned in monthly payments of interest and dues, until the shares reach a value equal to the loan. There is no by-law of the association, or contract or understanding with the borrowers, by which a borrower is entitled to a rebate of premium in case the loan is paid prior to the maturity of the shares. At the average premium paid, the shares would mature in about eleven years. It is necessary to compel some withdrawals in each series before maturity to prevent too large a sum becoming due at one time. The by-laws of the association provide that when such withdrawals become necessary, shares voluntarily withdrawn shall be entitled to their share of the total profits.

At the annual meeting of the directors in September, 1894, a vote was passed fixing the withdrawal value to a limited number of such shares as should first be voluntarily withdrawn from the first series, at $63.59 per share. The plaintiff, a director of the association and shareholder in subsequent series, moved to fix the value of such shares at $56.53. His motion was rejected, and this bill filed to restrain the payment of money under said vote. The question in controversy is whether premiums paid upon loans should be treated as profits when the loan is made, or should be apportioned over the entire period of the loan. The defendants contend that the former, and the plaintiff, that the latter method is the correct one; and each admits that the value claimed by the other is correct, if the method of computation is correct.

*Chamberlin & Rich* and *Albin, Martin & Howe*, for the plaintiff.

*Edward C. Niles*, for the defendants.

CLARK, J. If a withdrawing shareholder is entitled to any part of the profits it is by virtue of the statute or some by-law governing such withdrawals. "At any time after four years from the date of issue, the directors may, pursuant to the provisions of the by-laws, if any, on the subject, retire unpledged shares of any series and compel their withdrawal by paying to the shareholders the amount of dues paid upon the shares, and the proportion of profits belonging to them according to the last preceding adjustment and valuation of shares, less the amounts due from such shareholders for fines and other charges and for their proportionate shares of unadjusted losses, if any. If all unpledged shares are not so retired, the directors shall determine by lot which shall be retired." P. S., c. 166, s. 14. The by-laws of the association provide that "After four years from the date of issue of any series, if the board of directors deem it expedient to reduce the number of unpledged shares in said series, they shall cause a notice to be sent to the holders of said shares, stat-

ing the number required for reducing the series, and offering the total profits on them, if voluntarily withdrawn." The by-laws must be interpreted in conformity with the statute; and the provision that withdrawing shareholders shall have "the proportion of profits belonging to them according to the last preceding adjustment and valuation of shares," has reference to an adjustment and valuation properly and legally made. The statute provides for such an adjustment and valuation. "The interest, premiums, fines, and profits received by the corporation, less losses and the amount paid for the necessary expenses of the business, shall be equitably distributed among the shares and added to the dues paid by the shareholders at least once a year, until the value of each share in the series reaches two hundred dollars, when it shall be paid to the shareholder and the share shall be retired." P. S., *c.* 166, *s.* 11. The proportion of profits belonging to the shares according to the last preceding adjustment and valuation must be determined by an equitable distribution of the interest, premium, fines, and profits among the shares. An inequitable and unfair distribution is not in conformity with the statute, and is therefore void.

The only question is whether the premium bid for a loan should be treated as a profit when the loan is made, or apportioned equally over the entire duration of the loan. Should a computation of the profits to be distributed among withdrawing shareholders include the entire premiums which borrowers have agreed to pay, or such premiums as were earned at the date of withdrawal? Is a withdrawing member entitled to share in premiums actually paid, or in premiums agreed to be paid in monthly installments until the maturity of the shares? Obviously, he is entitled to share in premiums actually paid. A shareholder who withdraws is not liable for future losses, and is not entitled to future profits. If he shares in premiums agreed to be paid, he receives an anticipated profit; and if there should be a deficiency, instead of a profit, by reason of default in the payments agreed to be made, he has received more than his just proportion of premiums earned. Such a distribution is inequitable and contrary to the provisions of the statute.

The adjustment and valuation of shares made by the directors at the annual meeting in September, 1894, was incorrect, in that it included the premiums agreed to be paid to the maturity of the series to which the shares loaned upon belonged, whereas it should have included only the premiums actually paid at that time. The premiums should have been apportioned as claimed by the plaintiff, and the withdrawal value of each share fixed at $56.53.

*Case discharged.*

All concurred.